# United States Court of Appeals
## For the First Circuit

No. 10-1320

UNITED STATES

Appellee,

v.

ERIC MOLIGNARO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Lipez, Circuit Judge,
Souter, Associate Justice,[*]
and Howard, Circuit Judge.

Miriam Conrad for appellant.
Randall E. Kromm, Assistant United States Attorney, with whom
Carmen M. Ortiz, United States Attorney, was on brief, for
appellee.

July 6, 2011

[*]    The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**SOUTER, Associate Justice**.  In 2005, Eric Molignaro pleaded guilty to possession of child pornography and was sentenced to six months in prison and 36 months of supervised release, the latter subject to conditions intended to minimize the apparent risk of his sexual impropriety with children.  In 2008, the district court tightened the conditions, which, in 2010, Molignaro was found to have violated by lying to his probation officer about his activities and by failing to take part in a course of therapy for sex offenders, after being suspended for lying to those conducting the course.

Acting under 18 U.S.C. § 3583(e), the district court revoked the order for supervised release and resentenced the defendant.  Federal advisory sentencing guidelines recommended imprisonment of 3 to 9 months after such a violation, but the district court ordered 22 months (followed by further supervised release).  The court imposed the longer prison sentence so that Molignaro would have ample time to take part in a course of sex therapy at a nearby federal prison (Devens) that could run for up to 18 months, and although the judge did not state the period he would have imposed in the absence of the treatment program, he did say that 9 months would have been too short in light of what he found to be Molignaro's choices to go where children were present and the risk of untoward behavior was great.  Molignaro objected that setting the imprisonment term with the goal of providing therapy was error

-2-

as a matter of law, and that in any case 22 months was unreasonably long.  We hold that the resentencing court's objective of tailoring the length of imprisonment to provide adequate time for treatment was barred by statute, and we vacate the sentence and remand for resentencing.

Any criminal sentence must bear a fair relationship to the objectives set out in 18 U.S.C. § 3553(a), which include the provision of "needed . . . medical care, or other correctional treatment in the most effective manner," § 3553(a)(2)(D).  But sentencing alternatives include probation, supervised release and imprisonment, and, as to the last, 18 U.S.C. § 3582(a) provides that a sentencing court must recognize "that imprisonment is not an appropriate means of promoting correction and rehabilitation."  A cognate provision addressed to the Sentencing Commission leaves no doubt about what Congress meant:

> The Commission shall insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment.

28 U.S.C. § 994(k).[1]

---

[1]At Molignaro's resentencing after revocation of supervised release, his counsel called the court's attention only to § 994(k), not to § 3582(a), but the judge made it clear that he understood

-3-

Where § 3582(a) applies, then, a sentence of imprisonment may not be "impos[ed] or lengthen[ed] . . . to promote an offender's rehabilitation." Tapia v. United States, No. 10-5400, slip op. at 12 (U.S. June 16, 2011). The question is whether the veto on pegging sentence length to treatment opportunities for prisoners applies beyond the paradigm circumstance of the initial sentencing after a conviction.

Some courts have said no and have emphasized the language of § 3582(a) that regulates considerations "in imposing a term of imprisonment," just as § 994(k) tells the Sentencing Commission to make sure that treatment opportunities are not a proper object "when imposing a sentence to a term of imprisonment." These courts have found the limitation inapposite to resentencing after revoking supervised release because the governing statute in that context speaks not of "imposing . . . imprisonment," but of a court's option to "require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post release supervision," 18 U.S.C. § 3583(e). See United States v. Tsosie, 376 F.3d 1210, 1215 & n.4 (10th Cir. 2004); United States v. Anderson, 15 F.3d. 278, 282 & n.4 (2d Cir. 1994). But we think that other related

the objection, which doubtless calls for full-dress de novo, not just plain error, review.

-4-

language bars any inference that Congress was limiting the scope of § 3582(a) simply by speaking of "requir[ing] . . . [service] in prison" on revoking supervised release instead of "imposing . . . imprisonment," for 18 U.S.C. § 3583(h) refers to ordering imprisonment on post-revocation resentencing as "impos[ing]" imprisonment.

Nor do we think it is significant that § 3583(e), providing for revocation of the supervised release term of the original sentence, directs that the later court may consider the need for treatment as a proper object of sentencing, as listed in § 3553(a). One of the options on revocation of the original release term is imposition of a new term of supervised release in the superceding sentence, which thus precludes any inference that treatment must necessarily be a proper object of any imprisonment that may be imposed on resentencing.

There is, however, one drafting feature that works in favor of the government's position, and supports the district judge's assumption, that a need for treatment can justify a resentence to imprisonment beyond the Guidelines range. It is simply that § 3583(e), authorizing revocation of the original release order, provides for resentencing with the objectives set out in § 3553(a), including a prison term as long as the authorized statutory release period, but it does not contain the caveat that imprisonment is not an acceptable means of providing corrective or rehabilitative

-5-

treatment.  Thus, a textual contrast.  When § 3582(a) tells a court to sentence in order to realize the objectives of § 3553(a), (which include rehabilitation), it instructs that imprisonment is not the proper setting to realize a treatment objective.  But when § 3583(e) tells a court that it may revoke an earlier release order and sentence again, including imposing imprisonment, the limitation is absent.  The difference in drafting at least raises the possibility of interpreting the latter section under the rule that a textual difference between legislative provisions addressing closely related subject matter probably points to a difference in the results intended.  See Citizens Awareness Network, Inc. v. United States, 391 F.3d 338, 346 (1st Cir. 2004) ("Congress's use of differential language in various sections of the same statute is presumed to be intentional and deserves interpretive weight.").

Two reasons support the position that this apparent, technical leeway to imprison to provide treatment after revoking an earlier release order is consistent with congressional understanding.  First, the dog didn't bark.  The issue here has been litigated in other circuits for seventeen years now, and up to this time the courts have been unanimous in holding the government's way.[2]  Yet

---

[2] See United States v. Anderson, 15 F.3d 278, 282-83 (2d Cir. 1994); United States v. Doe, 617 F.3d 766, 773 (3d Cir. 2010); United States v. Giddings, 37 F.3d 1091, 1097 (5th Cir. 1994); United States v. Jackson, 70 F.3d 874, 880-81 (6th Cir. 1995); United States  v. Tsosie, 376 F.3d 1210, 1217 (10th Cir. 2004); United States v. Brown, 224 F.3d 1237, 1239-40 (11th Cir. 2000); see also  United States v. Crudup, 461 F.3d 433, 440 (4th Cir.

-6-

Congress has not seen fit to amend § 3583(e), and for that matter the Sentencing Commission, which is presumably more agile than Congress, has likewise taken no action through its regulatory power. Even though inferences of affirmative Congressional intent in the original legislation (or about the Commission's view of it) may not enjoy deductive certainty, inferring a legislative understanding consistent with such lengthy silence in the face of the unanimous judicial conclusion over the years would, without more, seem fair.

A further reason for thinking that the judicial results to date may have been faithful to what Congress had in mind may be put rhetorically: why would Congress have wished to deny a court the authority to provide an opportunity for corrective treatment in prison, once a defendant has squandered the chance for treatment on release? The conditions of prison life may well work against effective treatment there, but at the stage of revocation and resentencing the preferable setting of supervised release is a proven failure. Would it not be sensible to permit a final try at treatment even if prison's circumstances are comparatively unpromising, once a defendant has shown that attempting to treat outside will not work?

---

2006); United States v. Abeita, No. 10-2478, 2010 WL 4366993, at *4 (7th Cir. Nov. 2, 2010); United States v. Thornell, 128 F.3d 687, 688 (8th Cir. 1997).

We will be candid to say that if we were to stop here we would hold that the position taken up to now by the courts of appeals is the better view, and would add one more circuit to the list in support of the government's view. But there is yet another consideration, and although Molignaro has not argued it, the Supreme Court has relied heavily upon it in its recent decision in Tapia on the application of § 3582(a) to initial prison sentences.

Tapia held that the caution against imprisonment for rehabilitation is a prohibition not only to a decision to commit for that purpose, but to order a longer, rather than shorter term of any commitment in order to provide adequate time for a prison treatment course. The Court relied not only on the text of § 3582(a) and that of the directive to the Sentencing Commission in § 994(k), but also on a parallel indicator of congressional intent: the absence of any authority to the sentencing court either to assign a prisoner to a prison where the desired treatment or training is available (that decision being committed to the Bureau of Prisons), or to require the prison to enroll a particular prisoner in the rehabilitation scheme, or to order the prisoner to take part in it. Tapia, slip op. at 10. By way of contrast, the sentencing court is invested with compulsory authority when a course of rehabilitation or treatment is the object of a sentence of probation or supervised release. Id. The pertinence of this consideration when interpreting the statute is underscored in this

very case: the district court recommended that the Bureau of Prisons assign the defendant to a specific prison where therapy for sex offenders was available, and set the length of sentence to give ample time for a course of treatment that could run for 18 months, but the Bureau placed Molignaro at a different prison with no treatment program. The prisoner is left with the time to serve but no therapy even if he would be willing to accept it.

The unanimous Supreme Court's assessment of the significance of this fact about judicial authority makes it legally, and not just factually, pertinent to this case, even though Tapia dealt with initial sentencing, whereas resentencing is involved here. As noted, the Court relied for its conclusion, first, on the text of § 3582(a), then upon the context of its enactment in the same legislation as § 994(k). But the Court then found it "[e]qually illuminating" that Congress made no provision for judicial power to ensure that a sentence meant to provide a treatment or rehabilitation opportunity would accomplish its object. Tapia, slip op. at 10. The importance it placed on this "statutory silence" is stated categorically in the form of a major premise for a classic syllogism: "[W]hen Congress wanted sentencing courts to take account of rehabilitative needs, it gave courts the authority to direct appropriate treatment for offenders." Id. While the authority is there when sentencing to probation or supervised release, it is absent when imprisonment is ordered. "If Congress

-9-

had similarly meant to allow courts to base prison terms on offenders' rehabilitative needs, it would have given courts the capacity to ensure that offenders participate in prison correctional programs." Id. at 11. "That incapacity speaks volumes. It indicates that Congress did not intend that courts consider offenders' rehabilitative needs when imposing prison sentences." Id. at 11-12.

There is nothing tentative about this reasoning: if Congress wanted judges to consider rehabilitation, it gave judicial authority to control. If no authority was given, Congress did not want rehabilitation to be considered. And of course the Tapia holding makes it clear that when the Court concluded that Congress did not want rehabilitation considered, it means that Congress wanted rehabilitation not to be considered. Nor is there any hint in the Court's exposition that this understanding of congressional intent would not extend to provisions authorizing resentencing after violation of release conditions. In fact, the government advised the Court of the unanimous string of cases holding that on resentencing to prison a court could consider rehabilitation, Brief for the United States Supporting Vacatur at 25 n.5, Tapia v. United States, No. 10-5400 (U.S. June 16, 2011), but the Tapia opinion says nothing to reserve the possibility of recognizing any different view of congressional intent covering a case like this one. We therefore think that on a fair reading of Tapia, the

inference of legislative intent manifested by withholding judicial post-imprisonment authority must be held to trump any inference otherwise possible from the omission of the rehabilitation caveat in the resentencing provision.  We feel bound to conclude that rehabilitation concerns must be treated as out of place at a resentencing to prison, just as ordering commitment initially.

Accordingly, the sentence under review is vacated and the case is remanded for resentencing.

**Vacated and Remanded**.