# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

      v.

LEON W. GRANT,
          *Defendant-Appellant.*

No. 10-10245

D.C. No.
1:03-cr-00536-
DAE-1

OPINION

Appeal from the United States District Court
for the District of Hawaii
David A. Ezra, District Judge, Presiding

Argued and Submitted
September 19, 2011[1]—San Francisco, California

Filed December 5, 2011

Before: Robert R. Beezer, Andrew J. Kleinfeld, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Kleinfeld

---

[1]This case was originally calendared for October 4, 2010. We removed it from the calendar to consider the continuing vitality of *United States v. Duran*, 37 F.3d 557 (9th Cir. 1994). Grant was released on bail pending appeal, and a call for initial en banc was made. While the voting on whether to hear the case en banc was proceeding, the Supreme Court granted certiorari in *Tapia v. United States*, 131 S. Ct. 817 (2010), to review our unpublished disposition in *United States v. Tapia*, 376 F. App'x 707 (9th Cir. 2010) (unpublished), which had applied *Duran*. We then suspended voting on initial hearing en banc, pending the Court's decision in *Tapia*. The Court decided *Tapia* on June 16, 2011. The sua sponte en banc call was withdrawn, and we invited supplemental briefs addressing the effect of the Court's decision in Tapia. We heard oral argument on September 19, 2011.

## COUNSEL

Pamela O'Leary Tower, Kenwood, California, for the appellant.

Sangita K. Rao, Appellate Section, Criminal Division, United States Department of Justice, Washington, D.C., for the appellee.

## OPINION

KLEINFELD, Senior Circuit Judge:

We address whether rehabilitation can be considered for purposes of imposing imprisonment upon revocation of supervised release.

## I.  Facts.

Leon W. Grant's offense of conviction was fraud on two banks. By various means, he sought to enrich himself at the banks' expense with counterfeit checks. He was sentenced in

2004 to one day of prison on each count and five years of supervised release, plus $38,598.44 in restitution (he had attempted to obtain about half this amount, his partner about the same). Grant's supervised release sentence included mandatory participation in substance abuse and mental health programs, drug testing, and a prohibition on alcohol consumption.

Close to the end of the five years of supervised release, Grant was caught violating its terms in numerous ways. Several of the violations involved cocaine, marijuana, and alcohol, the substances that had concerned the court at his initial sentencing. He had also been hospitalized after an overdose in a possible suicide attempt. The court revoked his supervised release and sentenced him to three months of prison and another lengthy period, 57 months, of supervised release.

Grant was charged again, several months after being released from prison, for another series of violations of the conditions of his release. The court found Grant guilty of all six violations, and held the penalty in abeyance. The court did not revoke Grant's supervised release, but warned him that this was his last chance. A few months later, Grant's parole officer encountered him at a sushi bar. Grant told the parole officer that he had not had any alcohol, but the waiter said that Grant had purchased a large glass of sake, and a breathalyzer test showed that Grant had violated the no-alcohol condition of his supervised release. Grant did not show up for his drug test scheduled for the next day.

The Sentencing Guidelines range for these violations was three to nine months in prison, and Grant requested three months in a residential treatment program, but the court sentenced him to 24 months in prison to be followed by another 24 months of supervised release. The judge gave a thorough and thoughtful explanation of why he was imposing this sentence on Grant. What gives rise to this appeal is that the judge made it plain that he was giving Grant more time in prison in

order to facilitate his rehabilitation. Here is the explanation in full:

> [I]n this case I was very hopeful that despite we—with Mr. Grant we've had a long history of dishonesty, deception, abuse of alcohol, he's had drug issues, I mean just a whole series of problems one right after another, as well as other violations of the law, that this would help him make and turn the corner.
>
> And so I gave him a chance. But I made it very, very clear to him that if he violated the terms and conditions of his supervised release again, that the Court was going to have to take some decisive action. So, I was very hopeful that Mr. Grant would make it, in spite of the evidence to the contrary in his past. Sadly this is one of those occasions where I was wrong.
>
> Mr. Grant appears at this point in his life to be incapable of following the rules of staying away from alcohol and of—I assume drugs, I'm not going to find him guilty of taking drugs, but he avoided a drug test. He—and of course he continues to lie to the probation office with regard to material and significant matters with impunity. So we have absolutely no indicia of trustworthiness in anything he does or says.
>
> It's clear to the Court that Mr. Grant is really out of control. He is unable to control himself. He's unable to follow the rules. I don't think it's because he necessarily doesn't want to. I don't think he necessarily has a totally cavalier attitude. I just think that he presents now a serious danger to himself as well as a danger to the community in his current frame of mind. Looking at all of the 3553 factors it's

very clear to me that he needs a significant enough period of incarceration so that he gets a real time-out and serious treatment in a setting that will mandate that he in fact does what he's supposed to do because I have absolutely no confidence at all from his past behavior and from his history that absent compulsion of the kind that can provide—be provided for by incarceration that he will follow through.

If I were to give him the so-called third chance or fourth chance, whatever it happens to be that [Mr. Grant's counsel] would like me to give him, we will be right back here in another three to four months. Probably. Maybe even sooner. Because he's just incapable right now of following the rules.

And I gave him as stern a lecture as I could possibly give him the last time and it just apparently didn't make a dent, at least beyond a few weeks, and he was right back at his old behavior.

So, the Court actually feels that under the unique and rather unusual circumstances here that a variance from the guidelines is warranted because it is imperative that he receive a significant enough term of incarceration that he is able to actually receive meaningful treatment and also to break—help him break his cycle of abuse of substances. A period of nine months isn't enough. So the Court is going to impose a sentence of 24 months upon the defendant to ensure that he receives the significant drug treatment that he needs, as well as the alcohol treatment and mental health treatment and other things that are imperative that he receive because he is, as I said, as he currently stands a significant danger to himself. Any lesser period of time in the Court's view is going to do nothing. The Court has given him chance after chance after chance and—in an effort to avoid

this and unfortunately Mr. Grant has simply not been able to follow through.

The judge further explained his upward departure as based on Grant's having "absolutely no control now over [his] actions," and on the fact that at least 24 months of imprisonment was necessary to get Grant into the prison's rehabilitative program:

> And from my experience in talking with [the Bureau of Prisons], in order to get you into the kind of programs we need to get you in, we need at least 24 months. And that's one of the reasons I selected that time. . . . [M]y [previous] leniency was not helpful. And so the sentence I imposed [on] you was not imposed because of any vindictiveness on my part at all, but it's because I do think that anything less will be of no use to you or society. We need to get you in these treatment programs and . . . get you away from your bad habits and issues that you have in your mental health treatment, which I'm going to recommend serious mental health treatment, drug and alcohol treatment for you during your term at [the Federal Detention Center].

The court sentenced Grant to more time in prison than he otherwise would have, not only to protect society while Grant was in jail, but also to protect both society and Grant after his release. The judge's express purpose was to improve Grant's ability to deal with the drug and alcohol problems that contributed to his recurrent criminal conduct.

## II.  Analysis.

Grant argues on appeal that the sentence must be vacated, because the court should not have based the length of Grant's prison sentence on rehabilitation considerations. Grant did not object to the procedural error in district court, so we review

for plain error.[2] A subsequent Supreme Court decision[3] has made the error plain.[4]

**[1]** The district court acted correctly under what was then controlling Ninth Circuit authority, *United States v. Duran*.[5] The statutory backdrop is that Section 3553, the general statement of sentencing considerations, includes rehabilitation as a factor to consider,[6] but the section specifically on prison sentences includes the phrase "recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation."[7] We held in *Duran* that the "recognizing that . . ." phrase prohibited considering rehabilitation in deciding whether to send someone to prison, but not in deciding how long a prison term should be.[8]

**[2]** After the court's revocation of Grant's supervised release, the Supreme Court in *Tapia v. United States*[9] reversed an unpublished memorandum disposition in which we had

---

[2]*United States v. Autery*, 555 F.3d 864, 869-71 (9th Cir. 2009).

[3]*Tapia v. United States*, 131 S. Ct. 2382 (2011)

[4]*United States v. Gaudin*, 28 F.3d 943 (9th Cir. 1994) (en banc).

[5]*United States v. Duran*, 37 F.3d 557 (9th Cir. 1994).

[6]"Imposition of a sentence. (a) Factors to be considered in imposing a sentence. . . . The court, in determining the particular sentence to be imposed, shall consider . . . (2) the need for the sentence imposed . . . (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" 18 U.S.C. § 3553(a).

[7]"Imposition of a sentence of imprisonment. (a) Factors to be considered in imposing a term of imprisonment. The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." *Id.* § 3582(a).

[8]*Duran*, 37 F.3d at 561.

[9]*Tapia*, 131 S. Ct. at 2382.

applied *Duran*.[10] *Tapia* holds that the "recognizing that . . ." phrase prohibits consideration of rehabilitation, not only in deciding whether to imprison someone, but also for how long.[11] This holding overrules our decision in *Duran*. The facts of *Tapia* were much like ours: a prison sentence lengthened to facilitate appropriate substance abuse rehabilitation.[12] The difference is that *Tapia* involved an initial sentencing, while our case involves sentencing on revocation of supervised release. The question before us is whether *Tapia* is limited to imprisonment at initial sentencing, or if it extends to imprisonment on revocation of supervised release. We conclude that *Tapia* applies to imprisonment regardless of whether imprisonment is imposed at initial sentencing or on revocation.

The statutes do not suggest a distinction between *Tapia* and a revocation of supervised release case. The statute for modification or revocation of supervised release directs the sentencing court to consider Section 3553 factors, just as at initial sentencing.[13] It is true that the supervised release statute explicitly refers to the rehabilitation factor: "The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), *(a)(2)(D)*, (a)(4), (a)(5), (a)(6), and (a)(7) (1) terminate a term of supervised release . . . ; (2) extend a term of supervised release . . . ; [or] (3) revoke a term of supervised release[.]"[14] But "a particular purpose may apply differently, or even not at all, depending on the kind of sentence under consideration."[15] The supervised release statute in one breath instructs courts on factors to consider when terminating, extending, or revoking supervised release. Courts may factor in rehabilitation when they are terminating or extending

---

[10]*United States v. Tapia*, 376 F. App'x 707 (9th Cir. 2010) (unpublished).

[11]*Tapia*, 131 S. Ct. at 2391.

[12]*Id.* at 2385.

[13]18 U.S.C. §§ 3582(a), 3583(e).

[14]*Id.* § 3583(e) (emphasis added).

[15]*Tapia*, 131 S. Ct. at 2388.

supervised release, because neither of these actions involves sending a defendant to prison.

Nor do the Court's reasons for its holding in *Tapia* suggest distinguishing it from a revocation case. *Tapia* explains that federal sentencing used to be "premised on a faith in rehabilitation," but the Sentencing Reform Act of 1984 had rejected the idea in part because of the concern that "rehabilitation . . . had failed."[16] The "recognizing that . . ." phrase might be read as a "kind of loosey-goosey caution,"[17] but the Court read it to mean " 'thou shalt not' . . . consider rehabilitation," and to apply "*both* [when the court is considering] whether to imprison an offender *and* what length of term to give him."[18] The Court read the statute as a broad rejection of imprisonment as a means of promoting rehabilitation.[19] If prison must be imposed without considering rehabilitation, on the assumption that prison does not rehabilitate, then there is no reason to treat imprisonment as a rehabilitation tool upon revocation of supervised release.

**[3]** The Court noted the statutory arrangement disabling a sentencing court from controlling the Bureau of Prisons in determining what rehabilitation programs to apply to a prisoner.[20] A sentencing court can only recommend, and not require, that a prisoner be placed in a particular facility or program.[21] When it comes to probation or supervised release, on the other hand, courts may take rehabilitation into account and have the authority to mandate treatment.[22] A sentencing court would commit no error by "discussing the opportunities for

---

[16]*Id.* at 2386-87 (internal quotation marks omitted).

[17]*Id.* at 2388.

[18]*Id.* at 2389.

[19]*Id.* at 2390.

[20]*Id.* at 2390-91.

[21]18 U.S.C. § 3582(a).

[22]*Id.* §§ 3563(b), 3583(d).

rehabilitation within prison" and "urg[ing] the [Bureau of Prisons] to place an offender in a prison treatment program," but the court "may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation."[23]

*Duran* is overruled. And the reasons that the Court gave for overruling *Duran* apply as strongly to imprisonment on revocation of supervised release as to imprisonment on initial sentencing. Two of our sister circuits have divided on whether *Tapia* applies to imprisonment on revocation of supervised release. The First Circuit held in *United States v. Molignaro* that courts are not permitted to consider rehabilitation when they are revoking a term of supervised release, just as they are not permitted to do so when they initially sentence a defendant to prison or lengthen his prison sentence.[24] *Molignaro* takes special note of the incapacity of the sentencing court to require the Bureau of Prisons to enroll a prisoner in a particular rehabilitation program after revocation of supervised release,[25] the same reason that *Tapia* noted in the context of an initial sentence.[26] The Fifth Circuit in *United States v. Breland* goes the other way, noting that the supervised release statute directs a court to certain Section 3553 factors, including rehabilitation, and does not include the "recognizing that . . ." prohibition.[27]

We think that the First Circuit has the better of the arguments. The point in *Molignaro* about the incapacity of the revoking court to order what it considers to be appropriate rehabilitative measures outweighs the cross-referencing argument in *Breland*. The "recognizing that . . ." phrase does not

[23]*Tapia*, 131 S. Ct. at 2392-93.

[24]*United States v. Molignaro*, 649 F.3d 1, 5 (1st Cir. 2011).

[25]*Id.* at 4.

[26]*Tapia*, 131 S. Ct. at 2390-91.

[27]*United States v. Breland*, 647 F.3d 284, 288-90 (5th Cir. 2011), petition for cert. filed, ___ U.S.L.W. ___ (U.S. Oct. 14, 2011) (No. 11-6912).

limit itself, by its words, to initial sentencing, but appears to embrace all sentences of imprisonment.

We recognize that sentencing judges may have a hard time following *Tapia*'s command: "Do not think about prison as a way to rehabilitate an offender."[28] "[R]etribution, deterrence, incapacitation, and rehabilitation," the "four purposes of sentencing,"[29] sound more distinct than they really are. A judge may reasonably think that retribution and incapacitation will most effectively rehabilitate the criminal being sentenced. Punishment for wrongdoing is "classical conditioning whose effects we ordinarily identify as conscience,"[30] so the verbal difference between punishment and rehabilitation may obscure the fact that they are often the same thing. We make a child behave by telling him to go to his room, and we make an adult behave by telling him to go to his room, only his room has bars. Hopefully both the child and the adult will internalize a sense of wrongdoing attached to whatever conduct caused their confinement.

**[4]** Nevertheless, *Tapia* is the controlling statutory construction. So prison, whether as an initial sentence or on revocation of supervised release, can be imposed and the duration selected only for purposes of retribution, deterrence, and incapacitation, not rehabilitation. When a judge imposes prison, he may wisely believe that it will have rehabilitative benefits, but those benefits cannot be the reason for imposing it. On revocation of supervised release, district judges must make and articulate their imprisonment decisions in terms of the other legitimate sentencing criteria. This rule applies both when determining whether to impose imprisonment and when determining the length of the prison sentence.

---

[28]*Tapia*, 131 S. Ct. at 2390.

[29]*Id.* at 2387.

[30]James Q. Wilson & Richard J. Herrnstein, *Crime & Human Nature* 495 (1985).

Grant's sentence is VACATED and the case REMANDED for resentencing.