FILED
United States Court of Appeals
Tenth Circuit

April 5, 2012

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MELVIN CLYDE COLLINS, II,

Defendant - Appellant.

No. 10-2275
(D.C. No. 1:02-CR-00663-WJ-1)
(D. N.M.)

---

## ORDER AND JUDGMENT[*]

---

Before **GORSUCH**, **HOLLOWAY**, and **MATHESON**, Circuit Judges.

---

After Melvin Collins was convicted of sexually abusing his young daughter, the district court sentenced him to 66 months in prison and a term of supervised release. Mr. Collins served his time but had difficulty complying with the conditions imposed on his release. He violated those conditions not once but many times before the court finally revoked his conditional release and ordered him to serve 41 additional months in prison.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Now challenging his new prison sentence on appeal, Mr. Collins argues that the district court failed to give him adequate notice of the conditions imposed on his release. Specifically, he says the district court didn't tell him clearly enough that he needed to obtain sex offender treatment or risk being returned to prison. In aid of his argument, he emphasizes that 18 U.S.C. § 3583(f) requires probation officers to provide supervised release conditions that are "sufficiently clear and specific to serve as a guide for the defendant's conduct," and that due process requires much the same. *See United States v. Kennedy*, 106 F. App'x 688, 691 (10th Cir. 2004) (unpublished); *United States v. Spencer*, 640 F.3d 513, 520 (2d Cir. 2011); *United States v. Stanfield*, 360 F.3d 1346, 1353-54 (D.C. Cir. 2004).

Whatever other problems confront this line of argument, a factual one plainly does: Mr. Collins received clear and repeated notice of his need to obtain sex offender treatment. The district court's original judgment included "Standard Condition of Supervision No. 18." That provision expressly required Mr. Collins to submit to sex offender treatment. *See* Appellant's Opening Br. Att. B at 4. After each of his many supervised release violations, the district court issued new judgments that incorporated by reference all previously ordered release conditions. *See* Appellant's Opening Br. Att. C at 4 ("All previously imposed conditions remain in full force and effect."); Att. D at 3 ("All of the special conditions previously imposed remain in effect."). And shortly before his revocation, the district court issued yet another order instructing that all

previously imposed conditions remained in effect. *See* Appellant's App. Vol. I at 29. At no point did the court intimate that Mr. Collins was free to consider Condition 18 no longer operative.

Neither can we say that incorporating a prior condition of release by reference — instead of repeating it word for word in each new order occasioned by Mr. Collins's repeated supervised release violations — failed to provide him with statutorily or constitutionally sufficient notice. To be sure, the district court had a duty to supply notice clear enough to "'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited'" and conform his actions accordingly. *Kennedy*, 106 F. App'x at 691 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). But we see no reason to think a person of ordinary intelligence would have failed to understand the necessity of seeking sex offender treatment when the requirement was clearly stated initially and then repeatedly incorporated by reference. Indeed, we have held incorporation by reference can provide fair warning in criminal statutes. *See Hines v. Baker*, 422 F.2d 1002, 1005 (10th Cir. 1970) ("Such incorporation by reference to other defined offenses is not impermissibly vague."); *see also United States v. Lanier*, 520 U.S. 259, 264-67 (1997) (statute prohibiting deprivation of "rights . . . secured or protected by the Constitution" could give fair warning so long as the right incorporated by reference was itself sufficiently clear). And we see no basis for a different result here, in the sentencing context with a defendant well familiar

with the process. *See Kennedy*, 106 F. App'x. at 691 ("Conditions of probation may afford fair warning even if they are not precise to the point of pedantry.") (quotation marks omitted).

Alternatively, Mr. Collins claims that the district court erred when it stated that a new prison term would allow him the chance to benefit from resident prison sex offender treatment programs. Mr. Collins says that this was error because *Tapia v. United States*, --- U.S. ----, 131 S. Ct. 2382 (2011), and 18 U.S.C. § 3582(a), don't permit a court to issue a post-revocation term of incarceration based on its rehabilitative promise. Mr. Collins, however, failed to object on this basis during sentencing and so concedes he is left to proceed only under the plain error standard of review. *See, e.g.*, *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc). To establish plain error, Mr. Collins must demonstrate the district court (1) committed error, (2) the error was plain, and (3) the plain error affected his substantial rights. If these factors are met, we may exercise discretion to correct the error if (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

For purposes of our analysis we assume (without deciding) that 18 U.S.C. § 3582(a) plainly applies to the post-revocation context and that the district court rested its decision at least partially on rehabilitation, thus satisfying Mr. Collins's burden under prongs one and two of our plain error test. But even spotting all this to Mr. Collins, we still do not see how the putative error affected his

- 4 -

substantial rights and thus how he might satisfy the third prong of plain error review.

At plain error's third step, "we ask only whether there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Hasan*, 526 F.3d 653, 665 (10th Cir. 2008) (internal quotation marks omitted). In this context, it is Mr. Collins's burden to show that, had the district court refrained from considering rehabilitation, it is reasonably probable it would have issued a lower sentence than it did. *See United States. v. Cordery*, 656 F.3d 1103, 1108 (10th Cir. 2011).

Mr. Collins, however, gives us no reason to reach that essential conclusion — no reason to think that the district court would have sentenced him under any circumstances to less than 41 months. To the contrary, the 41 month term the district court issued represents the maximum sentence available and does not correspond to the length necessary to participate in any treatment program. (The only treatment program mentioned by the court requires a 30 month minimum term, much less time than the district court prescribed in prison for Mr. Collins.) Neither did the district court even cite the treatment program or its duration as a reason for its sentence. *See* Appellant's App. Vol. III at 112-15. Instead, the court indicated that it chose the maximum available term because Mr. Collins was unable to remain on supervised release without violating his conditions and because evidence presented to the court suggested Mr. Collins was not amenable

to sex offender treatment and, as a result, posed a continuing danger to the community. *Id.* at 112-14.

To be sure, the district court mentioned rehabilitation in the course of listing all the 18 U.S.C. § 3553(a) factors. *Id.* at 112. But we recently found that such a formulaic recitation of the statutorily enumerated sentencing factors supplies little indication that a court lengthened a sentence for rehabilitative purposes. *See United States v. Lewis*, No. 11-1054, 2012 WL 503859, at *2 (10th Cir. Feb. 16, 2012) (unpublished). And that must be particularly true here, where the district court followed its recitation of all § 3553(a) factors with the explicit disclaimer that "[s]ome of these factors don't really apply to Mr. Collins, but some of them definitely do," Appellant's App. Vol. III at 112, and then proceeded to explain its particular reasons for imposing the maximum prison term for Mr. Collins (his failure to abide prior release terms and the evidence of his continuing danger to the community) without mentioning rehabilitation. Unlike the courts in both *Cordery* and *Tapia*, then, the district court in this case never once intimated it was imposing a sentence long enough to allow Mr. Collins to receive a particular treatment program. *See Tapia*, 131 S. Ct. at 2385 (district court stated that the sentence had to be a certain length to allow participation in drug treatment); *Cordery*, 656 F.3d at 1108 (same). And given all this we simply can't conclude that Mr. Collins has borne his burden of showing that it is reasonably

probable that the district court, fully advised rehabilitation is a forbidden consideration, would give him a shorter sentence than the one it did.

Affirmed.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge

*No. 10-2275, United States v. Collins*

**HOLLOWAY**, Circuit Judge, concurring in part and dissenting in part:

I join the majority's holding that Mr. Collins violated the terms of his supervised release and had adequate notice of those terms.

As to the second issue appealed, consideration of rehabilitation during sentencing, I respectfully dissent from the majority's decision. I would hold that the district court plainly erred by seeking to promote Mr. Collins's rehabilitation when sentencing him to an above-Guidelines prison term of 41 months.

*1. Error*

In light of *Tapia v. United States*, 564 U.S. —, 131 S. Ct. 2382 (June 16, 2011), I believe that we must reconsider and treat *United States v. Tsosie*, 376 F.3d 1210 (10th Cir. 2004), as effectively invalidated. Our authority to disregard earlier circuit precedent is not boundless; we may reconsider an earlier panel's decision in light of an intervening Supreme Court decision only "to the extent the new case law invalidates our previous analysis." *Hurd v. Pittsburg State University*, 109 F.3d 1540, 1542 (10th Cir. 1997). *Tapia* invalidated the analysis engaged by the *Tsosie* panel in distinguishing between 18 U.S.C. §§ 3582 and 3583, and thus I would revisit *Tsosie's* holding.

The debate in *Tsosie* bearing on this case is the extent to which a sentence of imprisonment upon revocation of supervised release is governed by the rules that apply to a sentence of imprisonment upon conviction. The panel in *Tsosie* concluded, contrary to a vigorous dissent, that a district judge issuing a sentence

pursuant to § 3583(e), even if he imposes a term of imprisonment, is not subject to the prohibition on considering rehabilitative goals inherent in § 3582(a). In *Tapia*, the Supreme Court confirmed the *Tsosie* panel's understanding of § 3582 as applied to initial sentences of imprisonment without expressly evaluating § 3583.

But as the First Circuit has persuasively reasoned, the Supreme Court nevertheless addressed and "relied heavily" on a crucial consideration that *does* apply to § 3583: "the absence of any authority to the sentencing court either to assign a prisoner to a prison where the desired treatment or training is available . . . , or to require the prison to enroll a particular prisoner in the rehabilitation scheme, or to order the prisoner to take part in [the rehabilitation scheme]." *United States v. Molignaro*, 649 F.3d 1, 4 (1st Cir. 2011) (citing *Tapia*, 131 S. Ct. at 2390) (Souter, J., sitting by designation); *see also United States v. Grant*, 664 F.3d 276 (9th Cir. 2011) (agreeing with *Molignaro's* conclusion that *Tapia's* teachings bear on § 3583 just as much as § 3582).

In *Tsosie*, we distinguished a term of imprisonment resulting from revocation of supervised release as a conversion of an existing sentence rather than an imposition of a new prison term. *Tsosie*, 376 F.3d at 1216 (characterizing imprisonment upon revocation of supervised release as "merely altering the location of the defendant's supervised release from outside prison to inside prison"). *Tsosie's* characterization of § 3583(e) revocation's as a relocation of

- 2 -

the defendant says nothing of the sentencing court's abdication of control over rehabilitation that accompanies the supposed relocation.

The Supreme Court's reliance on Congress's declination to grant judicial authority to control a prisoner's rehabilitation extinguishes any such distinction between § 3582 and § 3583 as reasoned in *Tsosie*. "[W]hen Congress wanted sentencing courts to take account of rehabilitative needs, it gave courts the authority to direct appropriate treatment for offenders." *Tapia*, 131 S. Ct. at 2390. *Tapia*, in emphasizing the importance of lost *control* over rehabilitative activities when a defendant is sentenced to prison, rejected the notion that a § 3583(e) prison sentence is a mere location change. *Tsosie* said nothing of this collateral effect of a switch from supervised release to a prison term, which was of extraordinary importance to the Supreme Court in *Tapia*.

When a sentencing court orders imprisonment, it relinquishes its ability to dictate the defendant's rehabilitation. Under the Supreme Court's reasoning in *Tapia*, the loss of control over rehabilitation that accompanies a sentence of imprisonment after revocation of supervised release is antagonistic to the notion that the sentencing court might then, having passed on the opportunity to wield its power to require rehabilitation as part of a non-prison sentence, consider the availability of rehabilitation in deciding the length of time for which the defendant will sit in prison. *Cf. Tapia*, 131 S. Ct. at 2390 ("Equally illuminating . . . is a statutory silence — the absence of any provision granting courts the power to ensure that offenders participate in prison rehabilitation programs."). The great

importance placed on this consideration by the Supreme Court necessarily supersedes consideration of the more semantic distinctions drawn in *Tsosie*.

Turning to the facts of Mr. Collins's case, the sentencing court violated this precept, which prohibits promotion of rehabilitative goals when imposing a prison sentence under § 3583. The prosecution repeatedly and emphatically described the sex offender treatment available at the Devens facility in the hearings that comprised the sentencing process. Appellant's App. Vol. III at 37-38, 43, 99-100. Most notably, the prosecution's request for a 41-month upward variance was based on making available the Devens sex offender treatment program. *Id.* at 38 ("[The government is] recommending that [Mr. Collins] get designated to Devens, and with that, he has to have at least 30 months . . . in custody to receive that sexual offender program . . . ."). The government even urged the district court to imprison Mr. Collins for 11 months longer than needed to make him eligible for the treatment program in order to "make him realize that he does need [the Devens sex offender] treatment." *Id.* To facilitate proper consideration of the prosecution's request, the district court ordered a further hearing as to the defendant's amenability to sex offender treatment. *Id.* at 111. At the conclusion of that additional hearing, the judge granted the prosecution's request for an upward variance to a 41-month prison sentence. *Id.* at 114.

To be sure, the sentencing judge made some other statements prior to imposing the 41-month sentence that indicate consideration of proper § 3553 factors. For example, the judge remarked that he felt any future supervised

release would be counterproductive and that danger to the community could be of concern given the testimony of one of Mr. Collins's psychologists. Appellant's App. Vol. III at 112-14.

However, given the posture of the case, the sentence ultimately issued was inextricably tied to ensuring availability of the Devens program. The record does not reflect that the district court might have considered the possibility of a 41-month sentence in the absence of the prosecution's request for an upward variance, which was specifically premised on making the Devens program available to Mr. Collins. And in explaining the basis for the sentence, the judge specifically referred to "corrective treatment." Appellant's App. Vol. III at 112. But *Tapia* made clear that when sentencing to imprisonment, the defendant's rehabilitation is *not* to be considered despite § 3553(a)(2)'s listing of "correctional treatment" as a sentencing factor. *Tapia*, 131 S. Ct. at 2392. As expressed *supra*, I believe *Tapia* applies with equal force to prison sentences issued upon revocation of supervised release pursuant to § 3583 as it does to initial prison sentences under § 3582. Thus, I am convinced that promotion of Mr. Collins's rehabilitation was impermissibly considered as a factor in the judge's sentencing decision.

### 2. *Plain error*

Under plain error review, Mr. Collins must, of course, do more than show that the court below erred; he needs to show that the error was clear or obvious. In the Tenth Circuit, the plainness of error is measured based on the state of the

law at the time of appeal.  *See, e.g., United States v. Cordery*, 656 F.3d 1103, 1107 (10th Cir. 2011).  For the same reasons that I would disregard our earlier precedent of *Tsosie* in light of *Tapia*, I believe that *Tapia* has made the law on this issue clear and compels us to rule that the sentencing court may not impose or lengthen a sentence of imprisonment in order to promote rehabilitation whether sentencing a defendant to a term of imprisonment under § 3582 or § 3583.  In other words, "[a] subsequent Supreme Court decision has *made* the error plain."[1] *United States v. Grant*, 664 F.3d 276, 279 (9th Cir. 2011) (emphasis added).

### 3.  Effect of the error on Mr. Collins's substantial rights

The majority affirms the district court, reasoning that regardless of how the first two prongs of plain error analysis are decided, Mr. Collins cannot show that his substantial rights were affected.  Contrary to the majority, I would conclude that the district court's error affected Mr. Collins's substantial rights.  To satisfy this component of plain error review, a defendant must show there is a "reasonable probability that, but for the error claimed, the result of the proceeding

---

[1] Reconsideration of an earlier precedential decision of this Court is no small matter, and surely is not one to be taken lightly.  But here, such reconsideration is not only allowed, but also *compelled* by the Supreme Court's decision in *Tapia*.  *Tsosie's* error is no less plain simply because the analysis's flaw only became apparent upon issuance of a later Supreme Court decision. What is important is the obviousness of the analytical error in light of the new binding authority.  And on this count, the Supreme Court's teaching is, in my view, quite transparent: Rehabilitation may not be considered when sentencing a defendant to a term of imprisonment under either § 3582 or § 3583. An error is plain even where proper application of subsequent Supreme Court directives requires taking on the unenviable and exceptional task of scrutinizing and rejecting the analysis of a studied, reasoned, and thoughtful earlier decision by a Tenth Circuit panel.

would have been different." *United States v. Hasan*, 526 F.3d 653, 665 (10th Cir. 2008) (quotations omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome," and is not "a requirement that a defendant prove by a preponderance of the evidence that but for error things would have been different." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2009).

The government's request for an upward variance in sentencing was premised on making the Devens sex offender treatment program available to Mr. Collins. Pursuant to this request, the district court ordered a further hearing on the question whether to vary upward above the Guidelines range. Given this background, the 41-month sentence was inescapably tied to promotion of Mr. Collins's rehabilitation. Moreover, the 41-month sentence represented no small change from the Guidelines recommendation — it was more than four times longer than the top of the Guidelines range.

To be sure, and as the majority points out, we cannot be *certain* that permissible factors alone, such as danger to the community, could not justify the 41-month sentence in the sentencing court's mind. In particular, the majority is persuaded by the fact that merely a 30-month sentence would have made the Devens treatment program a possibility. However, this ignores the government's suggestion that an extra 11 months in prison (beyond the required 30 months) would make Mr. Collins even more likely to participate in the treatment program

than the bare-minimum 30-month sentence.   Specifically, the probation office

told the court:

> "We're recommending that [Mr. Collins] get designated to Devens, and with that, he has to have at least 30 months.  It's preferably 30 months remaining in custody to receive that sexual offender program in Devens, Massachusetts.  Unfortunately, he does have to go voluntarily.  I know Mr. Collins made remarks in the past that he doesn't want any treatment. . . .  I'm hoping that another 11 months would make him realize that he does need this treatment and he does need it to function so, when he is done, he could come out and be a productive citizen."

Appellant's App. Vol. III at 38.

As the majority notes, the district court explicitly stated that part of the

reason for imposing the above-Guidelines sentence was Mr. Collins's lack of

amenability to sex offender treatment.  The majority goes on to say that Mr.

Collins's aversion to treatment *resulted* in posing a continuing danger to the

community.  Maj. op. at 5-6.  However, in my view, the threat to the community

posed by Mr. Collins was a factor considered *in addition* to the need for sex

offender treatment in prison.  Specifically, the court said:

> "I do have some concerns in terms of the refusal . . . to further participate in sex offender treatment and with the result of a finding by Dr. Barneclo that Mr. Collins is not amenable to treatment.  You take that finding *and then you factor in* other noncompliance issues, potential violent ideations, that there is a potential threat to the safety of the community. . . .  Based on these findings, I [sentence Mr. Collins to prison] for a term of 41 months."

Appellant's App. Vol. III at 114 (emphasis added).  In my view, this statement

demonstrates that potential danger was an independent consideration, with the

*primary* factor in sentence length being Mr. Collins's need for a treatment program.

Unlike *United States v. Lewis*, an unpublished case whose reasoning is relied upon by the majority for its persuasive value, the defendant has shown much more than formulaic recitation of an impermissible sentencing factor. No. 11-1054, 2012 WL 503859 (10th Cir. Feb. 16, 2012) (unpublished). Instead, Mr. Collins has shown that the entire debate about an above-Guidelines sentence was premised on the fact that such a sentence would make the Devens program available. And unlike *Lewis*, the district court's specific discussion of Mr. Collins's refusal to take part in sex offender treatment outside of prison prefaced a generic discussion of statutorily enumerated sentencing factors. One can infer from this that the district court thought it particularly important to find a way to rectify Mr. Collins's lack of treatment, and that having treatment available in prison was the best way to do so.

To be sure, nothing the district court said on the record makes its justifications for the above-Guidelines sentence crystal clear. But such a demanding showing is not required, and here the availability of the Devens program unmistakably played a prominent role in the proceedings where the length of the prison term was decided. In my view, that is enough to undermine confidence in the outcome of those proceedings.

Thus, I would hold that the posture of the final sentencing hearing (which was premised on the government's unmistakable urging for the court to do whatever it takes to get Mr. Collins into the Devens treatment program), when considered alongside the sentencing judge's statement of reasons for the 41-month sentence, demonstrates a reasonable probability that Mr. Collins's sentence would have been different if the availability of rehabilitation was not taken under consideration.[2]

### 4. *Exercise of discretion*

Lastly, I would exercise the discretion afforded to us when reviewing for plain error under Federal Rule of Criminal Procedure 52(b). Even where the first three prongs of plain error review are satisfied, we should only exercise the remedial discretion granted by Rule 52(b) if the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *See United States v. Olano*, 507 U.S. 725, 732 (1993) (quotations omitted). In the sentencing context, the defendant must "demonstrate a strong possibility of receiving a significantly lower sentence." *United States v. Meacham*, 567 F.3d 1184, 1190 (10th Cir. 2009) (quotations omitted).

---

[2] Of course, I do not fault the district court for making this error. The Supreme Court had not even granted certiorari in *Tapia* when the district court imposed its sentence in Mr. Collins's case. But we evaluate the plainness of an error as of the time of appeal, not the time of the district court's decision — see *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc) — so remand is required despite the district court's entirely proper application of Tenth Circuit precedent when it handed down this sentence.

Even though there was no error in the calculation of the Guidelines range in Mr. Collins's case, the record strongly suggests that the 41-month statutory maximum sentence, over four times longer than the top of the Guidelines range, would not have been in play if the Devens treatment program was not considered. Properly implementing legislative directives when considering appropriate factors in sentencing is undoubtedly a critical element of the fairness, integrity, and public reputation of judicial proceedings. If there was plain error in imposing a dramatically lengthened sentence premised on promotion of a defendant's rehabilitation, allowing that sentence to stand would suggest that courts may usurp Congress's authority to lay down the foundations of the sentencing process. It is difficult to imagine an act that would do more to undermine the judiciary's public reputation.

* * *

For the foregoing reasons, I respectfully but emphatically dissent from the majority's holding as to the propriety of the term of imprisonment imposed upon Mr. Collins, and would remand the matter to the district court for resentencing consistent with the conclusions and views I have stated.